THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| YOLANDA M. SANDERS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL HOME LOANS, INC., f/k/a FLEET MORTGAGE CORPORATION<br><br>Defendant. | Civil Action No. 2:05-cv-02166-c/w 2:06-cv-01996<br><br>**This pleading applies to both 05-2166 & 06-1996**<br><br>SECTION **"N"** (ENGELHARDT)<br>DIVISION 2 (MAGISTRATE WILKINSON, JR.) |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FDIC-RECEIVER'S UNOPPOSED CONSOLIDATED MOTION TO STAY PROCEEDINGS PENDING EXHAUSTION OF MANDATORY ADMINISTRATIVE CLAIMS PROCESS</u>**

The Federal Deposit Insurance Corporation, in its capacity as Receiver for Washington Mutual Bank ("FDIC-Receiver"), respectfully requests that the Court further stay these consolidated actions until the earlier of (i) October 19, 2009, or (ii) 180 days after the named Plaintiffs and all of the Intervenor-Plaintiffs submit their claims in the mandatory administrative claims process set forth in 12 U.S.C. §§ 1821(d)(3) through (13), enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA").  Opposing counsel does not oppose this motion.

I.  INTRODUCTION

At FDIC-Receiver's request, the Court previously stayed this action for 90 days, until February 24, 2009, pursuant to 12 U.S.C. § 1821(d)(12).  During that 90-day stay, FDIC-Receiver has familiarized itself with the claims in this case, and taken measures to implement the mandatory administrative claims process.  An additional stay is now appropriate, as a matter of law.  As the Fifth Circuit has held, under 12 U.S.C. §§ 1821(d)(3) through (13), all claimants against a failed financial institution, such as Washington Mutual Bank ("WMB"), are required to exhaust an administrative claims process as a prerequisite to judicial review of their claims. Meliezer v. Resolution Trust Co., 952 F.2d 879, 882 (5th Cir. 1992) ("the language of the statute and indicated congressional intent make clear that [exhaustion] is required").

Because the administrative claims process is mandatory, "allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA."  Carney v. FDIC, 19 F.3d 950, 955-56 (5th Cir. 1994) (citation and internal quotation marks omitted).  For that reason, courts have consistently recognized that pending litigation should be stayed while the claimant exhausts the claims process.  Id.; Marquis v. FDIC, 965 F.2d 1148, 1155 (1st Cir. 1992) ("we see no reason why, in the vast majority of leftover pre-receivership cases, district judges would not, upon request of a party, hold pending litigation in abeyance until the administrative review process has run its course").

On September 25, 2008, WMB was closed and the FDIC was appointed as Receiver for WMB.  Exercising its exclusive authority under FIRREA, FDIC-Receiver established December 30, 2008, as the date by which claims against WMB must be submitted to FDIC-Receiver in the administrative claims process — the "claims bar date."  However, pursuant to FDIC-Receiver's policy, any creditors shown on the books of WMB who were not provided with mail notice at

2

least 30 days before the bar date are given 90 extra days to submit an administrative claim.

Here, FDIC-Receiver provided mail notice to the named Plaintiffs and one of the Intervenor-Plaintiffs (Alberta Metoyer) on December 18, 2008. FDIC-Receiver provided mail notice to the other three Intervenor-Plaintiffs on January 22, 2009 (Tamika Jackson, Andria Robinson, and Charles Robinson). Thus, the named Plaintiffs and Intervenor-Plaintiff Metoyer will be given until March 18, 2009, to submit any claims. The additional three Intervenor-Plaintiffs will be given until April 22, 2009, to submit any claims. Once a claim is submitted, FDIC-Receiver then has 180 days to make a determination on the claim. See 12 U.S.C. § 1821(d)(5)(A)(1). Accordingly, FDIC-Receiver requests that the Court stay this action through the earlier of (i) October 19, 2009, or (ii) 180 days after the named Plaintiffs and Intervenor-Plaintiffs submit administrative claims to FDIC-Receiver, to permit exhaustion of the claims process.

## II.  BACKGROUND

A.  <u>The Mandatory Administrative Claims Process</u>.

In FIRREA, Congress enacted a comprehensive statutory scheme granting the FDIC authority to act as Receiver for a failed financial institution and special powers to carry out that function. See 12 U.S.C. §§ 1821(c) & (d). The FDIC, as Receiver, must conserve and preserve the failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions among the institution's valid creditors. See 12 U.S.C. §§ 1821(d)(2)(A)(ii), (B) & (E). When making payment to creditors, the Receiver must prioritize payment in accordance with federal statutory and regulatory requirements. See 12 U.S.C. §§ 1821(i)(1) & (2); 12 C.F.R. § 360.2. Congress has given the Receiver discretion to determine the timing and amount of such distributions. See 12 U.S.C. §§ 1821(d)(10)(A) & (B).

FIRREA grants the Receiver "power to take all actions necessary to resolve problems posed by financial institutions in default." H.R. Rep. No. 101-54(l) at 330, as reprinted in 1989 U.S.C.C.A.N. 86, 126. The Receiver's powers are "quite broad, in keeping with the emergent objectives of the statute." Rosa v. RTC, 938 F.2d 383, 398 (3d Cir. 1991).[1] Congress gave the Receiver such broad powers so that it would be able to "resolve failed institutions in an expeditious manner." H.R. Rep. No. 101-54(l) at 322 (1989), as reprinted in 1989 U.S.C.C.A.N. 86, 118.

As an important part of the comprehensive scheme for winding up failed financial institutions, Congress created a statutory procedure for the orderly and efficient processing of claims. That administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3) through (13), centralizes the initial consideration and resolution of claims by requiring that all claims be submitted to the Receiver by the claims bar date. The Receiver then has up to 180 days to grant or deny those claims (in whole or in part), without the delay and expense of litigation. See 12 U.S.C. § 1821(d)(5)(A)(i).

The administrative claims process is mandatory. Thus, in section 1821(d)(13)(D), Congress withdrew jurisdiction from all courts to hear claims against the FDIC as Receiver, except as granted elsewhere in Section 1821(d):

> (D)   Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over —
>
> > (i)   any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets

---

[1] Numerous courts have recognized the broad grant of power in FIRREA. For example, the Eighth Circuit recognized that "Congress passed FIRREA as emergency legislation to resolve expeditiously the 'monumental problems involved with the unprecedented costs' of the savings and loan crisis." RTC v. CedarMinn Bldg. Ltd. P'ship, 956 F.2d 1446, 1456 (8th Cir. 1992). The Third Circuit commented that FIRREA is "the most sweeping thrift reform law in the nation's history." Praxis Props., Inc. v. Colonial Sav. Bank, 947 F.2d 49, 62 (3d Cir. 1991).

>of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
>(ii)   any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added). Jurisdiction is "otherwise provided" by subsection 1821(d) only for those claimants who have completed the claims process. See 12 U.S.C. §§ 1821(d)(6)(A)(ii), (d)(7)(A), & (d)(8)(C). Congress' overriding purpose for requiring exhaustion of the administrative claims process was to enable the Receiver "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly." H.R. Rep. No. 54(I) (1989), as reprinted in 1989 U.S.C.C.A.N. 86, 215.

Under FIRREA, the management of the claims process is committed to the exclusive power and discretion of the Receiver, and the Receiver's management of the claims process is a core function of the Receiver. See 12 U.S.C. § 1821(d)(3)(A) ("The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph 4."); id. § 1821(d)(4) (conferring FDIC with authority to promulgate regulations and rules concerning claims process and determination of claims); id. § 1821(d)(5)(D) ("The receiver may disallow any portion of any claim by a creditor . . . which is not proved to the satisfaction of the receiver."). Further, the Receiver may "exercise . . . such incidental powers as shall be necessary to carry out such powers," and "take any action authorized by this Chapter, which [FDIC] determines is in the best interests of the depository institution, its depositors, or the [FDIC]." Id. §§ 1821(d)(2)(J)(i), (ii).

B.   The Status Of This Action.

Plaintiff Yolanda Sanders filed this lawsuit in the 24th Judicial District Court for Jefferson Parish, Louisiana on September 24, 2004. On June 7, 2005, WMB removed the case to

this Court.  See Notice of Removal, June 7, 2005, Docket No. 1.  Four additional Intervenor-Plaintiffs, Tamika Jackson, Charles and Andria Robinson, and Alberta Metoyer, intervened in the case.  On March 17, 2006, all five plaintiffs filed the Amended and Superseding Complaint.  The Amended and Superseding Complaint is the operative complaint in this case  (the "Complaint").  See Amended Complaint, March 17, 2006, Docket No. 79.  On April 13, 2006, Edwin and Sharon Riley filed a complaint based on the same allegations as those in the Complaint.  On May 5, 2006, the court consolidated Edwin and Sharon Riley v. Washington Mutual Bank, F.A. et al. with Sanders et al. v. Washington Mutual Bank, F.A. et al..  See Order, May 5, 2006, Docket No. 94.

Plaintiffs and Intervenor-Plaintiffs allege that WMB initiated foreclosure proceedings against them that did not result in judicial sales because Plaintiffs and Intervenor-Plaintiffs either entered into agreements with WMB to stop the foreclosure proceedings ("Agreements"), or filed for Chapter 13 bankruptcy protection.  Plaintiffs and Intervenor-Plaintiffs allege that WMB, and lawyers assisting WMB, did one or more of the following: (1) overcharged Plaintiffs and Intervenor-Plaintiffs court costs and/or administrative fees related to the Agreements; (2) collected and held charges from Plaintiffs and Intervenor-Plaintiffs that were not owed to WMB; or (3) filed proofs of claims in Plaintiffs' and Intervenor-Plaintiffs' bankruptcy proceedings for amounts that were greater than what was owed to WMB.  Plaintiffs' and Intervenor-Plaintiffs' claims for damages are based on breach of contract, the Fair Debt Collection Practices Act, and Louisiana law.

On September 25, 2008, the Office of Thrift Supervision ("OTS") closed WMB and appointed the FDIC as Receiver for WMB.  See Declaration of  Russell W. Rudolph ("Rudolph

Decl."), Ex. A (OTS Order No. 2008-36, Sept. 25, 2008).[2] On that same date, a Purchase-and-Assumption Agreement (the "P&A Agreement") was entered among FDIC-Receiver, the FDIC in its corporate capacity, and JPMorgan Chase, National Association ("JPMorgan") with respect to certain assets and liabilities of WMB. See Rudolph Decl., Ex. B (P&A Agreement). Article 2.5 of the P&A Agreement expressly provides that JPMorgan did not assume "any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan or commitment to lend made by [WMB] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by [WMB], or otherwise arising in connection with the [WMB]'s lending or loan purchase activities. . . ." See Rudolph Decl., Ex. B at 9. Such litigation, including this case, remained with FDIC-Receiver.[3]

On November 25, 2008, FDIC-Receiver filed a consent motion to substitute itself for WMB as defendant in the consolidated actions, and to stay the actions for 90 days pursuant to 12 U.S.C. § 1821(d)(12). The Court granted the motion on November 26, 2008, staying the cases until February 24, 2009.

Congress has defined FDIC-Receiver's obligations to provide notice of the claims

---

[2] The FDIC is authorized to accept appointment as a Receiver for any insured depository institution. See 12 U.S.C. § 1821(c). When the FDIC is appointed as Receiver, the Receiver succeeds to "all rights, titles, powers and privileges of" the bank, and may "take over the assets of and operate" the bank with all the powers thereof. Id. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i). The powers and duties of the Receiver include the resolution of all outstanding claims against the failed institution. Id. To facilitate that process, Congress granted the FDIC, in its capacity as Receiver or Conservator, special statutory powers and defenses. See, e.g., 12 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action . . . to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or receiver.").

[3] A purchase and assumption transaction is the favored alternative in handling a bank failure because the "transaction usually is arranged overnight, so that banking services are not interrupted for a single business day." NCNB Texas Nat'l Bank v. Cowden, 895 F.2d 1488, 1496 (5th Cir. 1990). Accord FDIC v. Bank of Boulder, 911 F.2d 1466, 1469 (10th Cir.), cert. denied, 499 U.S. 904 (1991) ("Elimination of P&A's as an option for FDIC/Receiver would cause a great interference in the effective performance of the FDIC's mission to stabilize the banking industry.").

process by statute.  See 12 U.S.C. § 1821(d)(3).[4]  On October 1, 2008, pursuant to 12 U.S.C. § 1821(d)(3)(B), FDIC-Receiver published notice in The Seattle Times, the Las Vegas Review-Journal/Las Vegas Sun Newspapers and The Wall Street Journal notifying creditors that any claims against WMB must be submitted to FDIC-Receiver in claims process by December 30, 2008.  See Rudolph Decl., Ex. C (Declaration of David Swiss), at ¶ 3 and Attachment 1.  Pursuant to section 1821(d)(3)(B), the notices were re-published in The Seattle Times, the Las Vegas Review-Journal/Las Vegas Sun Newspapers, and The Wall Street Journal on October 31, 2008, see id. at ¶ 3 and Attachment 2, and again in The Seattle Times and the Las Vegas Review-Journal/Las Vegas Sun Newspapers on December 1, 2008, see id. at ¶ 3 and Attachment 3.

FDIC-Receiver has been carrying out its duty to provide individual mail notice of the claims process and the December 30 bar date to all creditors listed on the books and records of WMB, including to the named Plaintiffs and Intervenor-Plaintiffs in this case.  See Rudolph Decl., Ex. C at ¶¶ 4-5.  FDIC-Receiver attempted to provide mail notice of the claims process and bar date to creditors on WMB's books by November 30, 2008.  Id. at ¶ 4.  In some cases, mail notice was not sent until after November 30.  Id. at ¶ 5.  In such instances, pursuant to FDIC-Receiver's policy, creditors are given 90 days from the date of the notice letter to submit a claim in the claims process.  Id.  Here, because mailed notice was given to the named Plaintiffs and Intervenor-Plaintiff Metoyer on December 18, 2008, and to the additional three Intervenor-Plaintiffs on January 22, 2009 (see Rudolph Decl., Ex. D), they will be given 90 extra days, until March 18, 2009, and April 22, 2009, respectively, to submit their administrative claims to FDIC-Receiver.  Id.

---

[4] FDIC-Receiver is required to promptly publish a notice to the failed institution's creditors to present their claims, and related proof, by a specified date at least 90 days following publication of the notice, and to republish such notice 30 and 60 days after it was initially made.  See 12 U.S.C. § 1821(d)(3)(B).  FDIC-Receiver must also provide notice by mail to "any creditor shown on the [failed] institution's books . . . ."  Id. at § 1821(d)(3)(C).

8

III.  ARGUMENT

As a matter of law, this case should be stayed pending Plaintiffs' exhaustion of the administrative claims process mandated by FIRREA.

A.  Exhaustion Of The Administrative Claims Process Is A Mandatory Prerequisite To Judicial Review.

In 12 U.S.C. §§ 1821(d)(3) through (d)(13), Congress established a mandatory administrative claims process to provide a mechanism for resolving as promptly and efficiently as possible all claims against failed institutions.  See, e.g., Meliezer, 952 F.2d at 882; accord Bueford v. RTC, 991 F.2d 481, 484 (8th Cir. 1993); Henderson v. Bank of New England, 986 F.2d 319, 321 (9th Cir. 1993).  As the Fifth Circuit has explained:

> To assure that the RTC or Federal Deposit Insurance Corporation could deal expeditiously with failed depository institutions, Congress created a new claims determination procedure by which the creditors of a failed institution may be required to first present their claims to the Receiver for administrative consideration before pursuing a judicial remedy.  12 U.S.C. § 1821(d)(3).

Meliezer, 952 F.2d at 881 (footnotes omitted).  "The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures."  House Rep. No. 101-54(I) at 418-19, as reprinted in 1989 U.S.C.C.A.N. 86, 215.

As part of the administrative claims process, the Receiver has the power to set a claims bar date, by which all claims must be submitted.  See 12 U.S.C. § 1821(d)(3), 1821(d)(5)(C).  Under the statutory claims process, all claims against a failed financial institution must be presented before the claims bar date (or by a specific subsequent date, if the claims bar date has been extended for a particular claimant).  See 12 U.S.C. § 1821(d)(3).  The Receiver has 180 days after a claim is filed to determine whether to approve the claim.  See 12 U.S.C. § 1821(d)(5)(A)(i).  The Receiver may disallow any portion of a timely claim that is not proven to the Receiver's satisfaction.  Id. at §§ 1821(d)(5)(C), 1821(d)(5)(D).  Section 1821(d)(6)(A)

9

also establishes that a claimant can file a new suit, or continue a pre-existing suit, on a claim within 60 days after the earlier of (i) the Receiver's initial determination of a claim, or (ii) termination of the 180-day period in which the Receiver may determine the claim.  See 12 U.S.C. § 1821(d)(6)(A).[5]  In such a suit, the Receiver's final determination is subject to de novo judicial review.  See 12 U.S.C. § 1821(d)(7)(A).

Apart from the review process set forth in section 1821(d), Congress barred all courts from hearing claims against the Receiver, unless and until the claimant completes the administrative claims process.  See 12 U.S.C. § 1821(d)(13)(D).  As the Fifth Circuit succinctly concluded in Meliezer: "The [Plaintiffs] have failed to exhaust the administrative remedies as directed by FIRREA; the district court lacked subject matter jurisdiction over their claims."  952 F.2d at 883.  Other courts have consistently held that "Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process."  Simon v. FDIC, 48 F.3d 53, 56 (1st Cir. 1995).[6]

Moreover, the Fifth Circuit and other Circuits have consistently held that the

---

[5]  The statute provides that:
> [T]he claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A).

[6]  See also Damiano v. FDIC, 104 F.3d 328, 333 (11th Cir. 1997) ("For post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies."); Hudson United Bank v. Chase Manhattan Bank of Conn., 43 F.3d 843, 849 (3d Cir. 1994) ("[T]he purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs with claims against failed depository institutions to file their claims under FIRREA's administrative claims procedures before filing them in federal court."); Bueford, 991 F.2d at 484 ("Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court."); Henderson, 986 F.2d at 321 ("A claimant must . . . first complete the claims process before seeking judicial review); RTC v. Elman, 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says . . . that a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts."); FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 136 (3d Cir. 1991) ("[T]he administrative procedure exhaustion requirement of FIRREA is statutory, not judicial . . . .  We are therefore not at liberty to ignore the statutory command.").

administrative exhaustion requirement applies to all claimants, including those who had already initiated litigation against a financial institution prior to the appointment of a Receiver. For example, in Carney, the Fifth Circuit concluded that "FIRREA makes participation in the administrative claim review process mandatory, regardless of whether the claims were filed before or after the RTC was appointed receiver of the failed institution." 19 F.3d at 955.[7] The requirement that all claimants against a failed financial institution, including those who filed lawsuits prior to a bank's failure, exhaust the administrative claims process advances Congress's purpose to enable the Receiver to resolve the bulk of claims against failed financial institutions expeditiously, fairly, and without the expense of litigation. See H.R. Rep. No. 54(I) (1989), as reprinted in 1989 U.S.C.C.A.N. 86, 215.[8]

B.  A Further Stay Of This Action Is Required Pending Exhaustion Of The Administrative Claims Process.

It follows from the mandatory nature of the administrative claims process established by FIRREA that actions pending against a failed institution at the time a Receiver is appointed must be stayed to permit exhaustion of the claims process. As the Fifth Circuit held in Carney, "[i]t

---

[7] Accord Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1005-06 (4th Cir. 1994) (holding that subsections 1821(d)(13)(D) and (d)(6)(A) "mandate that the district court could not hear any claim until it has been rejected by the [FDIC] in its administrative review or until the 180 day administrative review period has expired."); Marquis, 965 F.2d at 1151 ("FIRREA makes participation in the administrative process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver."); Resolution Trust Co. v. Mustang Partners, 946 F.2d 103, 106 (10th Cir. 1991) ("The statute clearly requires that each creditor file a claim. 12 U.S.C. § 1821(d)(3)(B)(i). . . . No interpretation is possible which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process.").

[8] The administrative exhaustion requirement applies to all types of claims, including claims for non-monetary, equitable or declaratory relief. As the Ninth Circuit explained in Henderson, "[t]he [claims process] statute bars judicial review of any non-exhausted claim, monetary or non-monetary, which is 'susceptible of resolution through the claims procedures.'" 986 F.2d at 332 (emphasis added). Accord Elman, 949 F.2d at 627 (attorney retaining lien subject to claims process); Shain, Schaffer & Rafanello, 944 F.2d at 130 ("[E]ven a valid state law lien cannot be used to circumvent the claims procedure established under FIRREA . . . ."); Feise v. RTC, 815 F. Supp. 344, 347-349 (E.D. Cal. 1993) (holding that claims for injunctive and declaratory relief against Receiver were encompassed within jurisdictional bar of Section 1821(d)(13)(D) and dismissing those claims together with claims for money damages); RTC v. Wayne Coliseum Ltd. Partnership, 793 F. Supp. 900, 905-06 (D. Minn. 1992) (dismissing counterclaim seeking damages and specific performance because defendants had failed to satisfy the claims procedures).

appears clear to us that allowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA.  We conclude, as other courts have done, that FIRREA creates a scheme under which courts will retain jurisdiction over pending lawsuits — suspending, rather than dismissing, the suits — subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." 19 F.3d at 955-56; see also Marquis, 965 F.2d at 1154 (same); Brady Dev. Corp., 14 F.3d at 1005 ("While the claims received are under evaluation, sections 1821(d)(6)(A) and (d)(13)(D) forbid courts from continuing to exercise jurisdiction over pending claims against the [Receiver] and permit judicial review only after exhaustion of administrative remedies.  During the administrative review all pre-receivership claims are tolled.").

Recently, on February 6, 2009, under circumstances just like this case, the Fifth Circuit ordered that a putative class action against the FDIC as Receiver for WMB be stayed pending exhaustion of the mandatory administrative claims process.  See Trahan et al v. Long Beach Mortgage Co. et al, No. 08-40874 (5th Cir. Feb. 6, 2009).  Similarly, on December 4, 2008, the Third Circuit ruled that a putative class action against the FDIC as Receiver for IndyMac Bank, F.S.B. ("IndyMac") should be stayed pending exhaustion of the mandatory administrative claims process.  See Order Granting Motion for Stay Pending Exhaustion of the Mandatory Administrative Claims Process, Jones et al. v. FDIC as Receiver for IndyMac Bank, F.S.B. et al., No. 08-2353 (3d Cir. Dec. 4, 2008) (attached as Ex. E to the Rudolph Decl.).  Several other courts have recently issued orders staying pre-Receivership putative class actions against the FDIC as Receiver for WMB, or the FDIC as Receiver for IndyMac, pending the plaintiffs' exhaustion of the administrative claims process.  See, e.g., Order Granting Motion for Stay

Pending Exhaustion of the Mandatory Administrative Claims Process, McKell v. Washington Mutual, Inc., No. 08-cv-7888 (C.D. Cal. Jan. 5, 2009) (attached as Ex. F to the Rudolph Decl.); Order Granting Motion to Stay Proceedings and Order of Administrative Closure, Flores v. Long Beach Mortgage Co., No. SA-07-CA-208-FB (W.D. Tex. Jan. 5, 2009) (attached as Ex. G to the Rudolph Decl.); Order Granting Motion for Stay Pending Exhaustion of the Mandatory Administrative Claims Process, Tombers v. FDIC as Receiver for IndyMac Bank, F.S.B., 08 Civ. 5068 (NRB) (S.D.N.Y. Nov. 19, 2008) (attached as Ex. H to the Rudolph Decl.); Order for Stay Pending Exhaustion of the Mandatory Administrative Claims Process, Spicer et al. v. FDIC as Receiver for IndyMac Bank F.S.B., No. 07-03456 (C.D. Cal. Nov. 7, 2008) (attached as Ex. I to the Rudolph Decl); Order Granting Motion for Stay Pending Exhaustion of the Mandatory Administrative Claims Process, Thomas v. Mortgage Elec. Registration Sys., No. 08-2492 (7th Cir. Nov. 6, 2008) (attached as Ex. J to the Rudolph Decl.).

In this case, as noted above, the named Plaintiffs and Intervenor-Plaintiff Metoyer have until March 18, 2009, to submit their claims to the Receiver. The three additional Intervenor-Plaintiffs have until April 22, 2009, to submit their claims to the Receiver. Under 12 U.S.C. § 1821(d)(5)(A)(i), FDIC-Receiver has 180 days from the date of submission to act on a claim. Thus, in this case, FDIC-Receiver will have until (i) September 14, 2009, to make a determination of the named Plaintiffs' and Intervenor-Plaintiff Metoyer's claims; and (ii) October 19, 2009, to make a determination of the additional three Intervenor-Plaintiffs' claims. Claimants may judicially challenge FDIC-Receiver's treatment of a claim, or continue a pre-receivership legal proceeding as to a claim, within 60 days of the earlier of (i) a decision by FDIC-Receiver on the claim, or (ii) the expiration of the 180-day statutory decision period for the claim. See 12 U.S.C. § 1821(d)(6)(A). Thus, this case should be stayed until the earlier of

(i) October 19, 2009, or (ii) 180 days after the named Plaintiffs and all of the Intervenor-Plaintiffs submit their administrative claims to FDIC-Receiver, in order to permit exhaustion of the administrative claims process.  See, e.g., Carney, 19 F.3d at 956; Marquis, 965 F.2d at 1155 (courts should "hold pending litigation in abeyance until the administrative review process has run its course, or 180 days has passed, whichever first occurs").[9]

C.       Motion is Unopposed

Defendant would show that opposing counsel indicated he was unopposed to this motion.

IV.  CONCLUSION

For the foregoing reasons, FDIC-Receiver requests that the Court stay this action until the earlier of (i) October 19, 2009, or (ii) 180 days after the named Plaintiffs and all of the Intervenor-Plaintiffs submit their administrative claims to FDIC-Receiver in the claims process.

Dated:  February 17, 2009                              Respectfully submitted,

By:    /s/ Russell W. Rudolph
Russell W. Rudolph (La. Bar No. 19391)
Seale & Ross
P.O. Drawer 699
200 North Cate Street
Hammond, LA 70404
(985) 542-8500

Thomas M. Hefferon (pro hac vice)
Joseph F. Yenouskas (pro hac vice)
Scott B. Nardi (pro hac vice)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
(202) 346-4000

*Attorneys for Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank*

---

[9] If Plaintiffs ultimately do not file a timely administrative claim, FDIC-Receiver will move to dismiss this case for lack of subject matter jurisdiction.  See Meliezer, 952 F.2d at 883 (dismissing action filed against financial institution for lack of subject matter jurisdiction where plaintiffs did not exhaust claims process).

14

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 17th day of February, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following:

    Ellis B. Murov: emurov@dkslaw.com, npreston@dkslaw.com

    Kevin C. Schoenberger: kcschoenberger@gmail.com, lcslaw@aol.com

    Wiley G. Lastrapes, Jr: wiley@lastrapeslaw.com, wlastrapes@cox.net

    Thomas M. Hefferon: thefferon@goodwinprocter.com

    Meredith Moore Hayes: mhayes@dkslaw.com, aleday@dkslaw.com

    Scott B. Nardi: snardi@goodwinprocter.com

    Joseph F. Yenouskas: jyenouskas@goodwinprocter.com

I further certify that I have mailed the foregoing document and notice of electronic filing by email and/or first-class mail to the following non-CM/ECF participants:

    Alberta Metoyer
    3417 Hamburg Street
    New Orleans, LA 70122

    Benjamin E. Kringer
    David A. Super
    Julia E. Guttman
    Sheila J. Kadagathur
    Baker Botts, LLP (Washington)
    The Warner
    1299 Pennsylvania Ave., N.W.
    Washington, DC 20004-2400

                            /s/ Russell W. Rudolph